Please the court. My name is John Hill and I represent plaintiffs Jeff Williams and Phil Colby. I should I should disclose Mr. Hill and I were in the same law school class at the University of Chicago. He is much younger now than he used to be. Thank you. I thought I was going to say the same of you. The issue before this court is whether there's a genuine dispute as to a material fact. That material fact is whether to use the language from the California Casey instruction for products liability for a manufacturing defect. And I quote, the product contained a manufacturing defect when it left defendant's possession as Casey 1201. The product in this case is the Ryobi miter saw the plaintiff was using when the guard flew off causing amputations with his fingers. The defendant manufacturer was supposed to have attached the guard to the body of the saw using a bolt with a lock nut. Also the defendant manufacturer was supposed to have applied an adhesive called Loctite to the boat to prevent the nut from coming off the boat. That's the testimony of Todd Chipner, the PMK for Techtronic and Jeff Winchester, another employee of Techtronic, the defendant. The saw was defective because the defendant manufacturer failed properly to install the alternatively, the nut was defective because the manufacturer used a regular nut instead of a lock nut on the boat. Mr. Hill, I want to make sure I understand California law on this topic. I think I do, but I want to ask your friend the same question. Let's assume that instead of the testimony that we had in this case, the contractor who sold the saw to your client said, I bought it new in this package from Home Depot. I never opened it, never did anything to it and that was his testimony. Would this case then go to, we get past the question that bothered the district court in this case, correct? That's what bothered the district court, correct. Right, so I'm not clear why at least a question of, and this is what I want to ask your opponent, but I'm not clear why at least a question of fact wasn't created on that issue by your client's testimony that he went to the store and looked at this in a package and it looked exactly the same. It may have been that it wasn't and that could be proved later, but my second question for you, and this is a question for you, is your negligence claim different than your product's liability claim? The negligence claim permits a reciprocal instruction which the product's claim would not. Right, and so for the reciprocal instruction, does it matter that your client had control of this saw for two years after he bought it? In other words, I'd understand Recipsa makes perfect sense if when you buy it something happens bad, but now you've had it for two years. Is Recipsa an appropriate under California law, which I don't purport to understand, is Recipsa appropriate under those circumstances? It would be because the second prong of Recipsa is similar to the product's claim. That is that the issue that caused the injury to the plaintiff was there when it left the defendant's hands. Are the claims under both entirely duplicative? In other words, if you were to prevail under one, you wouldn't be able to get damages under the other? Well, the negligence claim is somewhat different. It's discussed way back in the Escola v. Coca-Cola case before product's liability. No, I understand the difference conceptually. I'm just asking a damages question, which is that were you to prevail on the product's liability claim, you would not get any additional damages under the negligence claim, would you? That's correct. Thank you. Let me ask you a different question, Mr. Cahill. How are prior to the accident evidence of a defective saw? Two things, your honor. Ms. DeMarco, the metallurgist in this case, examined the bolt that at one time had a nut on it under electron microscopes and other various devices that magnified the bolt 170 times, 175 times. And what she learned from her examination of the bolt, she's a very qualified metallurgist, is that there had been a nut on it, but it had obviously shaken loose because it had been put on cockeyed or it may not even have been a proper lock nut, but just a regular nut. And she could determine that from examining the threads on the bolt that at one time had a nut on it. So the obvious conclusion that finder of fact or a juror who listened to that evidence could conclude there was a nut on it that over time, because of the jiggling of the saw, because of flying off and causing the amputation of the plaintiff's fingers. And you believe that that would be evidence of a defective product? That would be one item of evidence of a defective product because the protocol from the manufacturer called for a lock nut, not just a regular nut, and called for it to be put on properly and called for it to be put on with an adhesive called Loctite. And had they put Loctite on, which they did not, the nut could not have come off. And if the nut could not have come off, if Loctite had been placed on the bolt, then the guard would not have been able to have flown off, causing the reaction of the amputation of his fingers. Can I ask you a couple of questions, please? Did your expert, when she was reviewing the carriage bolt, look for evidence of Loctite? She absolutely did. And if I have the citation to her testimony, it's in the record. I can look through my notes and find it. And did she offer any opinion as to the defense expert that said that, well, if there was Loctite on there, and this is my understanding of their argument, that it would have only been in the nut that was never found, not on the carriage bolt? Absolutely. Absolutely. Her testimony as set out in her declaration and her attached report was that in her many years as a metallurgist, and she used an electron microscope and other various devices to examine the bolt, magnifying it 175 times. And she found absolutely no residue on the threads of the bolt that one time had a nut on it. She said that absolutely there would be residue that you could see with an electron microscope, magnified the bolt 175 times, and there was absolutely no residue, which caused her to conclude to a reasonable degree of scientific certainty that there was never any Loctite placed on the bolt. And the carriage bolt and the nut is in a location in the saw, and I was trying to understand this, that requires a partial disassembly of the saw to have access to. And so my question is, if the bolt were to come loose, would it be able to get, did the expert look at whether or not the bolt would be able to get out of that area of the saw absent the saw being disassembled? There was space from which a bolt could have exited the space that held the bolt and the nut. Yes, that's correct. And obviously that's what happened because there was, based on the examination of the bolt under magnification with the electron microscope, there were damage to the threads indicating that a nut had at one time been on it. But had come off. So obviously the nut came off and went somewhere and was never able to be found. So there are numerous facts from which inference could be made to a more likely than not standard. And those facts include the package itself and the testimony of the plaintiff, Mr. Hawley. He said the saw, and I quote, he purchased the saw in new condition, sealed in factory packaging as in the record at 123. He testified the seal hadn't been messed with as far as I can tell, 123. Sometime later he was in a Home Depot store and observed the same saw he had purchased. And that was quote, in similar boxing close quote, as in 129. And he eliminated the possibility that someone had taken the saw out of the box and used it and then replaced it in the box because quote, the packaging just looked pristine. Close quote. Well, that's one fact from which a juror can conclude that the defect occurred while it was still in the hands of the manufacturer. And can I ask you, I'm sorry, a California law question. Is the loss of consortium claim, is that a standalone claim? Independent as to whether or not your other claims survive? It would depend on, well, first the jury would have to find that the defendant was liable for manufacturing defect liability. If the juror found that Mr. Hawley was to recover, then the husband would tag along with the loss of consortium claim. So you're saying the loss of consortium claim is not an independent claim, it depends upon finding liability in regard to Mr. Hawley? That's correct. Okay. So one of the other factors that would indicate that the manufacturing defect, that is the failure to put a lock nut on the boat, the failure to put Loctite on the boat to keep the nut from coming off, is the testimony of Chip Winchester, Todd Chipner, and Don DeMarco, the metallurgist. First of all, as the court pointed out, to get to the nut, quote, you would potentially have to remove the saw blade to access it. It's not accessible from the exterior of the saw. Irregardless of the saw blades from the exterior access point, you couldn't access the nut. It's inside, basically inside the upper door. So it's very difficult for anyone to get to it. Next, Chipner testified that the protocol calls for the application of Loctite, and that's at 136, 137. And the exact details of that requirement are at 137. And then we've already discussed Don DeMarco, the metallurgist testimony, was that the boat was designed to hold a lock nut and have Loctite. And if the manufacturer had applied Loctite, there would be residue on the boat, and there was no residue. And to a scientific, reasonable degree of scientific certainty, there would have been residue on the boat, and there was none. I want to- Do you want to reserve any of your time? I'll reserve my remaining time, Your Honor. Very well, very well. Okay, let's now hear then from Mr. Williams for Dick Trotting. Thank you. Your Honors, may it please the Court, thank you very much. My name is Jeff Williams. I represent the defendants in Applebee's Tektronik Industries, North America, and One World Technologies, which I will shorten to Tektronik during this presentation. I've got some questions that I know you have because they've been previewed. Let me just start out by saying what I think the Court appreciates, and that is the critical fact in this case is that Appellant's only claim below was that this saw contained a manufacturing defect, because that was his only claim under either strict liability or negligence, because he couldn't prove that there was an effect in the saw when it left the factory covering judgment. Appellant has also recently pled a design defect theory, but after extensive discovery, they found no evidence to support it. They abandoned it, and they were proceeding with the trial only with their claim being that the saw contained a manufacturing defect. The difference between a manufacturing defect and a design defect, either under strict liability or negligence under the law is the key to this case and the reason why summary judgment was properly granted by the judge. In a design defect case, the design's easy to prove. You've got engineering drawings, you've got safety reviews, you've got test data, you've got examples of identical products. They can be brought into the courtroom. This means the plaintiff has no problem showing what he or she contends is defective about the design, and also what's critical here, it means the defendant has a fair opportunity to defend that design. There isn't any question about what it is. The defendant knows what it has to defend, and that's why when you look at the approved jury instructions for a design defect theory in the Consumer Expectation Test and 1204 for the Risk Benefit Test, there's no requirement. The plaintiff showed that the product contained the defect at the time it left the factory. The plaintiff can prove the defect at the time of the incident. It's presumed it was present when the product left the factory, since the same line of products were all designed the same way. So 1203 and 1204 of Casey set forth those elements, and neither of them has a, what I call, when it left the factory requirement. The manufacturing defect case is different. Plaintiff is saying, the saw I was injured on didn't come off the assembly line right. Even though most of your saws are perfectly safe and well designed, and that's essentially what they said here, mine wasn't, and something was off with it. And that's why in a manufacturing defect case, we don't have a record of the problem, because it shouldn't have been produced and sold with a defect. So that's why California law imposes on the plaintiff in a manufacturing defect case such as this, the obligation not just to prove what he contends was wrong with the saw at the time of the accident, but to trace that condition back and prove that the allegedly defective condition existed at the time it left the factory. Okay, I appreciate that clarification, and I understand it. So here's my question. Had Mr. Hawley purchased this saw at Home Depot in its original packaging, and had he suffered precisely the same injury that he did one day after he bought it, and then presented precisely the same expert testimony that he presented here, would he have a jury case? Yes, he would. He would. Okay, now let's break that into its components then. Didn't he at least create a jury question that he purchased it in the same form in which it left the factory? Did he in this case? Yes. No, he didn't. And the reason he didn't is because, as I'm sure your honors know, he bought this saw from a guy by the side of a road on a road trip to Southern California. And these facts are important. He didn't get the guy's name. He didn't get a receipt. There's no picture of the saw as he purchased it. There's no picture of the packaging. He's lacking lots of evidence, and he may get murdered at trial because of the absence of that evidence. But he says, I bought it in its original packaging, and I know that because I went to the store and looked at the original packaging, and it was the same. He can, of course, introduce that the fact the guy told him it was the original packaging, because that's hearsay. Why isn't that at least create a jury question about whether he bought it in its original state? Actually, your honor, the last example that you just gave, he doesn't even say that. He says very conclusively, and this is what Judge Orr struggled with and decided that plaintiff didn't have enough to get to the jury. When asked how it was packaged at Home Depot, what was identical about it? He said, oh, I don't recall if it was taped or it was stapled or it was some combination of the two. So his conclusion that it was packaged identically didn't have a foundation. But didn't that really go more to the credibility and the weight of the evidence? I get your point. It may not be a very strong way of asserting what the plaintiffs need to show here, but these are close questions. But it seems to me much of your argument against what was said was on credibility and the weight of the evidence. And your honor, if that were the case and if that were sufficient to get to the jury in a case such as this, then you've really read the requirement of the defect being present when it left the possession of the defendant out of the jury instruction and out of California law. Because a plaintiff could always say, well, here's some evidence that might tend to show that nothing had happened to this saw. And California courts and the Judicial Commission in drafting the jury instructions has made a specific requirement because of exactly that. And because of the unfairness it would place on a defendant to have to defend against a case where it's not known what happened between, to go back to Judge Hurwitz's example, Tektronix factory to Home Depot's store to plaintiff and he takes it home. There's a presumption there that the chain of custody has been established. And if we want to show that a manufacturing defect there didn't exist when it left our possession, that is when the burden is on us. But here there's a gap. And if you let that gap be filled in by type of conclusory speculation, when plaintiff has effectively prevented the defendant from responding to it, because we can't. But with respect to counsel, if he has an inability to remember certain details, if he's wavering and so on, then you attack him in cross-examination. You show that's not credible. And basically that's what I'm struggling with here. I admit a lot of that seems pretty weak, but I don't see why it doesn't go to weight and credibility. It would go to weight and credibility if there weren't the gap between Home Depot, because RYOBI or Tektronix makes these miter saws, brands them with the name RYOBI, and they sell them through Home Depot. If we didn't have the gap between whatever Home Depot store it was, which we don't know, and whatever intermediary purchaser there may have been, we know that there was one unnamed guy by the side of the road. We have no idea if he bought it from someone else. But with respect to that, doesn't he say, I mean, again, credibility, but he says it was pristine. It was in the original package. Now you can maybe argue that that's nonsense, but he says that. So there you have the concept that's come from the manufacturer without change. And Judge Smith, what Judge Oryx had to say about that, I think correctly, is that the easy conclusory, somewhat lazy statement, oh, it was pristine. It looked just like it did at Home Depot. And in response to my very first question in the deposition, as to the basis of that conclusion, he said, well, I don't know if they staple the boxes or tape the boxes. I'm not sure how they're packaged, but it was pristine. And that Judge Oryx said there was some level at which the quality of the evidence, even giving plaintiff all the inferences he's entitled to on summary judgment, doesn't get to the point where it's a genuine issue. Is it a theoretical issue? Maybe so. But there's no genuine issue here because plaintiff had no evidence to get it from Tektronix factories, even through Home Depot. He went through there and to this guy by the side of the road who sold it to Mr. Holley. If the guy by the side of the road gave a deposition and said, I bought this new from Home Depot and this is exactly as I bought it, would we have a jury case? I think we probably would, Your Honor. Because then we have the opportunity to do discovery and to find out and to probe him and to see if, in fact, he did do something to alter it. And if that were the case, and we couldn't prove any of those things, and we've got us conceding it goes Home Depot and a credible guy saying, I bought it and kept it sealed and then sold it to Mr. Holley. I think that gap that exists in this case goes away. Well, if I were to make Mr. Hill's argument for him, he'd say, well, we do have that evidence. I put on a couple of experts to testify that it's very, very difficult to open this thing up and change the things that we manufactured. The wrong bolt was in it. There wasn't enough glue in it. Doesn't that at least provide some evidence that as to the manufacturing defect that's alleged, there was no change in the product? It doesn't because for the following reason. I don't claim that the question of there was a defect at the time of the accident is summary judgmental. Okay. All of that testimony from the experts is based. I understand your point. And to respond to your question, it doesn't create an issue of fact because our expert, as I think Judge Smith may have noted, opined that you're going to see it most likely on the nut, which very significantly in this case, we also don't have, not only don't we have the chain of custody, we don't have the component of the saw that they say failed. The experts disagree on that. Neither of those entitles either side to summary judgment based upon their expert's testimony. But if that were enough, that would read the requirement that it be in a condition that left the factory right out of the jury instruction and right out of California law and the Tucker versus Wright medical technology case. And one other that I'm looking for right now explains that dueling expert opinions don't get you where you need to go. Plaintiff having an expert who says this is the condition. And I think that existed at the time of the accident doesn't establish that it occurred when it left our factory. And I think Mr. Hill's reference to Mr. Hill. I was asking a different question and I apologize. I thought the plaintiff's experts opined that it must have been in this defective condition when it left the factory because it's almost impossible to get inside and change the things that we found in there. Is it? And that's not exactly what they said, but I think it's close. It is close, your honor. And, but I think what's important is the expert that Mr. Hill referenced Ms. DeMarco at excerpts of record page 56 said, and let me quote her here. It's clear to a reasonable degree of engineering and scientific certainty. So it starts off well, that the nut employed was not uniformly seated and may have been either cocked or not properly installed or inadequately engaged or tightened further without an inspection of the nut. It's not possible to determine if the nut utilized contained a locking mechanism in accordance with the design and engineering drawings. So even what Ms. DeMarco says, if you accept it at face value, as of the time of the accident, or actually two years after the accident, when she inspected it, she's only throwing out alternative scenarios. And the reason to get back to the critical issue in this case, the reason why that isn't enough and why it might be in some other case is because we can't manufacturing defect cases in California are special. It is a heightened burden on the plaintiff and it's a heightened burden because plaintiff in this case is acknowledging 25,000 of these things went out into the market as far as I can tell. And 24,999 of them seem to have performed just properly and given no indication that there was a problem with a nut like this. So did the saws have serial numbers on them? And did this saw have a serial number? Yes and yes, Judge Burgess. And did you track down when it was manufactured and when it was shipped and when it was sold? We know the manufacturer date. I don't have it off the top of my head here, but yes, we can get from us to within a reasonable period of time to Home Depot. Yes. And how does that comport with the timeframe in this case of when it was purchased and when the accident occurred? When the repurchase occurred, I believe it was within a year to a year and a half of the manufacture date. I'd have to check on that though. I'm guessing from memory. Okay. Thank you. Just to wrap up in all 17 seconds that I have, the heightened burden here that I don't have to sense it, I hear Your Honor is struggling with, is necessary because a manufacturing defect case is so unusual. And because despite the expert testimony plaintiff still can't fill in the gap and explain what happened between Tektronix factory and the guy by the side of the road, he doesn't meet his burden under either strict liability or his negligent cause of action. And that's why Judge Oreck properly entered the summary judgment. Well, thank you, Mr. Williams. Mr. Hill, you have a little time left for rebuttal. Mr. Hill? Yes. We can't hear you. Oh, there we go. Okay. Okay. Now I got it. I need my children to help me with the unmuting business. Anyway, quickly, the factory did not inspect each of these saws as they left the factory. And that's the testimony you'll find from the witnesses from the defendant Tektronix. So they cannot claim they checked it and it was fine because they just checked every so many, one out of hundreds or so as they come through. Another point I wanted to make, and it's very important, California law does not require a chain of custody or chain of possession analysis or requirement. That's from Judge Treanor from Escola all the way up through Yuba Power and up to the present. Dependents have falsely stated that the case of Barrett versus Atlas Powder Company requires a chain of custody or chain of possession analysis. Barrett did not hold that. Barrett was simply a case that held you could not establish a manufacturing defect from the fact of an accident alone. Barrett refers to Maloney. Maloney has nothing to do with chain of custody or chain of possession. So I see my time is up, but that's the point I wanted to make from Barrett. Well, we thank both counsel for your arguments. Very helpful to us. The case just argued, Holly versus Economic Industries, North America, Inc. is submitted. We thank both of you gentlemen, wish you a good day, and the court now stands adjourned for the week. Thank you, your honors, and the same to you. Thank you. Thank you.
judges: M. Smith, Hurwitz, Burgess